IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
GARY WAYNE RICE,                )
                                )
                 Petitioner,    )
                                )
           v.                   )    1:12CV628
                                )
RICHARD NEELY,                  )
                                )
                 Respondent.    )
```

**MEMORANDUM OPINION AND ORDER**

**Auld, Magistrate Judge**

    Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On April 2, 2002, in the Superior Court of Forsyth County, Petitioner pled no contest to attempted first degree rape, four counts of attempted first degree sex offense, and two counts of indecent liberties with a child in cases 01 CRS 55835, 55836, and 5622 through 5625. (Docket Entry 1, ¶¶ 1-6; see also Docket Entry 11, Exs. 1, 2.) In accordance with the plea arrangement, the trial court consolidated all of the charges into one Class B2 felony and sentenced Petitioner to 189 to 236 months in prison. (Docket Entry 1, ¶ 3; see also Docket Entry 11, Exs. 1, 2.)

    Petitioner appealed his convictions to the North Carolina Court of Appeals (Docket Entry 1, ¶¶ 9, 10; see also Docket Entry 11, Ex. 4 at 24-26, Ex. 5), and that court denied his appeal on May 15, 2003 (Docket Entry 1, ¶ 10(c), (d); see also Docket Entry 11, Ex. 3). Petitioner did not pursue his direct appeal any further. (See Docket Entry 1, ¶ 10(g), (h); see also Docket Entry 17 at 4.)

Petitioner then submitted a pro se motion for appropriate relief ("MAR") with the state trial court (Docket Entry 1, ¶¶ 11, 12(a); see also Docket Entries 11-8 & 11-9), which he dated as signed on January 6, 2011 (see Docket Entry 11-9 at 10), and which that court accepted as filed on January 10, 2011 (see Docket Entry 11, Ex. 8 at 1 (indicating date filed)). The trial court denied the MAR by order dated March 29, 2011, and filed March 30, 2011. (Docket Entry 1, ¶ 12(a)(7), (8); see also Docket Entry 11, Ex. 8.) Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals (Docket Entry 1, ¶ 12(b); see also Docket Entry 11, Ex. 9), which he dated as submitted on April 19, 2011 (Docket Entry 11, Ex. 9 at 12), and which that court received as filed on April 21, 2011 (id. at 2). The Court of Appeals denied Petitioner's certiorari petition by order dated May 5, 2011. (Docket Entry 1, ¶ 12(b)(7), (8); see also Docket Entry 11, Ex. 11.) Petitioner then submitted a "Notice of Appeal," a "Motion for Discretionary Review" and a "Petition for a Writ of Certiorari" to the North Carolina Supreme Court (Docket Entry 1, ¶ 12(c); see also Docket Entry 11, Ex. 13), all of which he dated as submitted on May 19, 2011 (Docket Entry 11, Ex. 13 at 4, 6, 8-11), and which that court stamped as received on May 23, 2011 (id. at 2). That court denied all three of Petitioner's filings by orders dated June 15, 2011. (Docket Entry 1, ¶ 12(c)(7), (8); see also Docket Entry 11, Ex. 14.)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 1), which he failed to date or sign (id. at 39),[1] but which the Court stamped as filed on June 21, 2012 (id. at 1). Respondent moved to dismiss the Petition on statute of limitation grounds. (Docket Entry 10.) In response, Petitioner filed a number of documents: (1) an "Answer to Respondent['s] Init[i]al Answer to Petition for Writ of Habeas Corpus" (Docket Entry 15); (2) a "Motion to Grant Writ of Habeas Corpus on Statu[t]e[]s" and a brief in support (Docket Entries 16, 17); (3) a "Motion to Amend" his Motion to Grant Writ of Habeas Corpus and a reply brief in support (Docket Entries 18, 21); and (4) a document entitled "Petitioner's Brief Opposing Respondent's Motion to Dismiss Writ of Habeas Corpus" (Docket Entry 22). Docket Entries 17, 18 and 21 contain arguments directed toward the timeliness of the Petition. Therefore, the Court will consider these arguments, along with the arguments in Docket Entries 15 and 22, all as part of Petitioner's response in opposition to Respondent's instant Motion to Dismiss. The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 23.)

### **Petitioner's Claims**

Petitioner raises ten claims for relief in his Petition: (1) he received ineffective assistance of counsel in that his counsel misinformed him about the length of his prison sentence; (2) he was sentenced on both the superceding indictment and the original

---

[1] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

-3-

indictment for the same offenses; (3) the original and superceding indictments constituted double jeopardy; (4) his indictments were duplicitous because they charged two or more distinct offenses in single counts; (5) he was subjected to a multiplicity of indictments because the indictments charged a single offense in different counts multiple times; (6) he suffered pre-indictment delay; (7) the increase in the number and severity of the charges upon re-indictment constituted vindictive prosecution; (8) the victim gave tainted testimony; (9) his sentence was based on prejudicial evidentiary rulings which punished him twice for the same offenses and resulted in an aggravated sentence; and (10) he suffered prejudice due to ineffective assistance of counsel. (Docket Entry 1 at 8, 11, 13-14, 16, 19, 21, 23-24, 26, 28-29, 31.)

## **Discussion**

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[2] outside of the one-year limitation

---

[2] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, (continued...)

period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Petitioner appears to assert that the limitation period described in subparagraph (B) should apply to the instant Petition. In a section entitled, "Timeliness of Petition," Petitioner recites

---

²(...continued)
the Court need not consider this matter further.

the language of subparagraph (B)[3] without identifying either the alleged State-created impediment or the date on which any such impediment was removed. (Docket Entry 1, ¶ 19.) In his brief in support of his Motion to Grant Writ of Habeas Corpus (Docket Entry 17), Petitioner appears to contend that the state courts' denial of his various post-conviction petitions constituted state impediments to his ability to file the instant Petition within the time limit (see id. at 5-6). In his Motion to Amend (Docket Entry 18), Petitioner makes the additional argument that his State-imposed incarceration constitutes a "civil disability" that impeded his ability to file a federal habeas petition (see id. at 1-2). In his reply brief in support of his Motion to Amend (Docket Entry 21), Petitioner adds a third argument that his lack of access to a law library represents a State impediment to federal habeas relief (see id. at 2-3). All of these arguments lack merit.

Even under the liberal construction due to a pro se litigant, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), none of Petitioner's allegations demonstrate that the limitations period proscribed by subparagraph (B) should apply in this case. First, the state courts' rulings on Petitioner's post-conviction petitions did not impede Petitioner from filing the instant Petition before the expiration of the one-year period, because all such rulings

---

[3] Notably, Petitioner attempted to include the North Carolina Constitution as a basis of violation by adding the words "and North Carolina" into the language of § 2244(d)(1)(B). (Docket Entry 1 at 38.) The statute permits only State impediments that violate federal law or the United States Constitution to delay the commencement of the statute of limitations. 28 U.S.C. § 2244(d)(1)(B).

-6-

occurred long <u>after</u> the one-year period had already expired. Second, although Petitioner's incarceration is State-imposed, he has failed to show how such incarceration impeded his ability to timely file the instant Petition.  Clearly, despite his incarceration, Petitioner managed to file his MAR in the state courts and the instant Petition and numerous subsequent filings in this Court.  Petitioner does not explain how he managed to take such action after the limitation period had expired, but could not do so earlier.  Finally, Petitioner's lack of access to a law library does not trigger application of subparagraph (B).  Under well-settled Supreme Court precedent, the absence of law libraries does not violate the Constitution or any other federal law, because inmates in this State have access to North Carolina Prisoner Legal Services, Inc.  <u>See</u> <u>Bounds v. Smith</u>, 430 U.S. 817 (1977) (ruling that state only has an obligation to provide <u>either</u> prison law libraries <u>or</u> assistance from persons trained in the law), <u>overruled on other grounds by</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 354 (1996). Under these facts, no basis exists for any belated commencement of the statute of limitations under § 2244(d)(1)(B).

 Petitioner further alleges that the limitations period should begin to run on the date "on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  (Docket Entry 1 at 38.)  This time, however, Petitioner does not, in either his Petition or his various filings following Respondent's Motion to Dismiss, provide any further detail of when or how he discovered the factual predicates

-7-

of his claims or what steps he took to exercise "due diligence." Where a petitioner makes only conclusory and unsupported allegations, a delayed commencement of the statute of limitations under § 2244(d)(1)(D) does not apply. See Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain why factual predicate could not have been discovered earlier or provide any dates by which court could calculate limitations period) (quoting Allen v. Hancock, No. 1:11CV123-HSO-JMR, 2011 WL 7461993, at *2 (S.D. Miss. Nov. 9, 2011) (unpublished)); Norrid v. Quarterman, No. 4:06-CV-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that petitioner bears burden of establishing applicability of section 2244(d)(1)(D), including his due diligence, and that conclusory statements do not satisfy burden); Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (holding that unsupported and conclusory arguments do not warrant application of § 2244(d)(1)(D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (finding subparagraph (D) inapplicable where petitioner "never identifie[d] when or how he discovered his 'new evidence,'" and noting that petitioner's "contention that he could not have discovered it sooner with due diligence is unsupported and conclusory").

Moreover, the facts underlying Petitioner's claims include (1) defective indictments; (2) tainted victim testimony; (3) ineffective assistance of trial counsel; and (4) erroneous

-8-

evidentiary rulings that prejudiced Petitioner's sentencing. (See Docket Entry 1 at 8, 11, 13-14, 16, 19, 21, 23-24, 26, 28-29, 31.) Petitioner knew, or should have known with the exercise of due diligence, all of these facts at the time of his convictions on April 2, 2002.

As the record does not reveal any grounds for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the trial court entered judgment against Petitioner on April 2, 2002 (see Docket Entry 11, Ex. 2), and the Court of Appeals denied his appeal on May 15, 2003 (see id., Ex. 3). Petitioner did not file a petition for discretionary review with the Supreme Court. (Docket Entry 1, ¶ 10(g), (h); see also Docket Entry 17 at 4.) As Respondent has asserted (Docket Entry 11 at 3-4), and Petitioner has not disputed (see Docket Entries 15-18, 21, 22), Petitioner's convictions thus became final on June 24, 2003, 35 days after the decision of the North Carolina Court denying Petitioner's certiorari petition. See N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of

-9-

appeal or petition for discretionary review); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding conviction final on direct review 35 days after Court of Appeals' opinion where no timely petition for discretionary review filed). The limitations period then ran for 365 days until it expired a year later on June 24, 2004, nearly 8 years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until January 6, 2011, well after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 1 at 38; Docket Entry 15 at 2; Docket Entry 17 at 4-5; Docket Entry 18 at 2-3; Docket Entry 21 at 2-4.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____,

130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some <u>extraordinary circumstance</u> stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

First, Petitioner asserts that he filed a direct appeal of his "sentencing and ineffective assistance of counsel." (Docket Entry 1 at 38.) However, the fact that Petitioner pursued a direct appeal does not bear on the issue of equitable tolling, as the one-year period did not even begin to run until after Petitioner's direct appeal had concluded in June 2003.

To the extent Petitioner requests equitable tolling because he denies knowledge that he had the right to further pursue his direct appeal in the North Carolina and United States Supreme Courts (see Docket Entry 17 at 4), that argument also fails for several reasons. First, Petitioner's failure to pursue his direct appeal beyond the North Carolina Court of Appeals had no impact on his ability to file the instant Petition, because he still possessed the ability to exhaust his state remedies by filing a MAR in the state trial court and appealing its denial to the North Carolina Court of Appeals. See Robinson v. Lewis, No. 5:12-HC-2021-F, 2013 WL 1182658, at *6 (E.D.N.C. Mar. 21, 2013) (unpublished) (holding state remedies exhausted by either pursuing a direct appeal through the North Carolina Supreme Court or by filing a MAR and appealing its denial to the North Carolina Court of Appeals); Simpson v. Branker, No. 3:11-cv-348-RJC, 2012 WL 4321294, at *3 (W.D.N.C.

-11-

Sept. 20, 2012) (unpublished) (same). Thus, as of May 15, 2003, the date the North Carolina Court of Appeals denied his direct appeal, Petitioner could have either petitioned the North Carolina Supreme Court in his direct appeal or pursued a MAR in the state trial court.

Instead of acting in a timely fashion, Petitioner waited over seven years before pursuing a MAR in state court. This lack of diligence in pursuing his rights forecloses equitable tolling in this case. "'[E]quity is not intended for those who sleep on their rights.'" Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). Moreover, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see also Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).[4]

---

[4] To the extent Petitioner also alleges that the Court should excuse his late filing for lack of awareness of the one-year limitations period (see, e.g., Docket Entry 15 at 2; Docket Entry 17 at 4), a "civil disability" because of his incarceration (see, e.g., Docket Entry 18 at 2-3; Docket Entry 21 at 2), proceeding pro se (see, e.g., Docket Entry 17 at 5), or lack of access to a law library (see, e.g., Docket Entry 17 at 5; Docket Entry 21 at 2-4), those
(continued...)

-12-

Next, Petitioner appears to argue that the Court should treat his Petition as timely because the State cannot show any prejudice from his late filing, citing Alexander v. Maryland, 719 F.2d 1241, 1245-47 (4th Cir. 1983), Dumas v. Kelly, 418 F.3d 164, 167-68 (2d Cir. 2005), and Hannon v. Maschner, 845 F.2d 1553, 1555-57 (10th Cir. 1988). (Docket Entry 15 at 3.) This argument lacks merit. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), effective April 24, 1996, mandates the one-year limitations period at issue here. AEDPA superceded Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts and prior practice as to the doctrine of laches in habeas cases, both of which involved a determination of prejudice to the State as a result of the delay. See Langley v. Director, Dep't of Corr., No. 2:09cv436, 2010 WL 2483876, at *6 (E.D. Va. May 28, 2010) (unpublished).[5] Under AEDPA, the "prejudice" to Respondent has no bearing on the timeliness analysis.[6] Petitioner

---

[4](...continued)
arguments fail for the same reason.

[5] Rule 9(a) provided that "[a] petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in the ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

[6] The Dumas decision does not support Petitioner's argument. The Dumas court analyzed whether the State was prejudiced by the § 2254 petitioner's delay under Rule 9(a) because, as the district court's decision below makes clear, the petition was filed in the period of time after the passage of AEDPA on April 24, 1996, but before the Supreme Court deleted Rule 9(a) effective December 1, 2004. See Dumas, 418 F.3d at 166 n.2; see also Dumas v. Kelly, 105 F. Supp. 2d 66, 69 (E.D.N.Y. 2000); Advisory Comm. Notes to 2004 Amendments ("[C]urrent Rule 9(a) has been deleted as unnecessary in light of the applicable one-year statute of limitations for § 2254 petitions, added as part of [AEDPA].") Thus, even though Dumas' petition, filed on April 17, 1997, was timely under AEDPA, the State filed
(continued...)

clearly did not file his Petition within the one-year limitations period proscribed by AEDPA and, as discussed above, he has failed to establish any grounds warranting equitable tolling.

In sum, the Petition is untimely.[7]

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 10) is **GRANTED,** that Petitioner's Motion to Grant Writ of Habeas Corpus (Docket Entry 16) is **DENIED,** that Petitioner's Motion to Amend (Docket Entry 18) is **GRANTED,** that the Petition (Docket Entry 1) is **DISMISSED,** and that this action is **DISMISSED** pursuant to a contemporaneously entered judgment.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 19, 2013

---

[6](...continued) a motion to dismiss the petition under Rule 9(a) because that rule was still in effect. Dumas, 105 F. Supp. 2d at 69 ("Even a petition, like this one, that is timely for purposes of AEDPA may be dismissed pursuant to Habeas Rule 9(a).") The Alexander and Hannon cases are inapposite because both involved convictions that predated the passage of AEDPA.

[7] Petitioner's Motion to Grant Writ of Habeas Corpus (Docket Entry 16) asks the Court to (1) grant Petitioner the relief requested in the Petition; or (2) require Respondent to provide a full answer on the merits of Petitioner's claims. (Docket Entry 16 at 1-2.) The Court will deny this Motion in light of its determination that the Petition is untimely. Petitioner's Motion to Amend (Docket Entry 18) seeks to supplement the Motion to Grant Writ of Habeas Corpus with additional arguments. The Court will grant this Motion.